**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

-------------------------------------------------------------------x

**TZVI KLEIN, on behalf of himself and all others
similarly situated,**

               **Plaintiff,**

     **-against-**

**PHYTON TALENT ADVISORS LLC and SOCIETE
GENERALE AMERICAS,**

               **Defendants.**

-------------------------------------------------------------------x

              **No.:  21-cv-12171-MAS-LHG**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO TRANSFER VENUE AND DISMISS, AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION TO AMEND HIS COMPLAINT PURSUANT TO FED.
R. CIV. P. 15(a)(2)**

---

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Lucas C. Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................... i

**I.     PRELIMINARY STATEMENT** ................................................................................. 1

**II.    COUNTERSTATEMENT OF FACTS** ...................................................................... 2

   A.  Allegations in the Complaint ................................................................................... 2

   B.  Allegations in Plaintiff's Proposed Amended Complaint ...................................... 4

**III.   ARGUMENT** ............................................................................................................... 5

   A.  Plaintiff Does not Oppose Defendants' Motions to Transfer on the Ground that the
       Southern District of New York has General Personal Jurisdiction over Defendants with
       Respect to all Claims Alleged ................................................................................... 5

   B.  Plaintiff Alleges Plausible Claims of Overtime Violations Under the Fair Labor Standards
       Act and the New Jersey Wage and Hour Law ......................................................... 5

      *1. The FLSA's Overtime Requirement and Regulatory Exemptions for Bona Fide
          Executive, Administrative, or Professional Employees* ................................. 7

      *2. The Regulatory Exemption for "Highly Compensated" Executive, Administrative, or
          Professional Employees Relaxes the Duties Test but Retains the Weekly Salary Basis
          Requirement* ..................................................................................................... 8

      *3. Defendants Misinterpret and Effectively Eliminate the Salary Basis Requirement for
          Highly Compensated Employees* .................................................................... 10

      *4. An Employee Paid at a Daily Rate is not Paid on a "Salary Basis" because the Smallest
          Increment of Time for Which Compensation must be Calculated and Guaranteed to
          be Considered a "Salary" is One Workweek* ............................................... 13

      *5. Plaintiff – Who Received only a Daily Rate and was not Guaranteed a Weekly Salary –
          was not Paid on a Salary Basis "as Set Forth in § 541.602" and Therefore Does not
          Qualify as an Exempt Highly Qualified Employee Under § 541.601* ......................... 16

      *6. Defendants' Tortured Interpretation of Anani and Litz with Respect to 29 C.F.R.
          § 604(b) Does Not Absolve them of the Weekly Salary Basis Requirement* ............... 18

      *7. Plaintiff Does Not Meet Either Condition of 29 C.F.R. § 541.604(d)* ........................... 20

*8. Conclusion – the Allegations in Plaintiff's Original Complaint Demonstrate he is Not Exempt Under §§ 541.601 or 541.604(b)* ................................................................. 22

*9. The Allegations in Plaintiff's Proposed Amended Complaint Demonstrate He Would not be an Exempt Highly Qualified Employee Even Under Defendants' Interpretation of the Salary Basis Test* ................................................................. 22

C. Plaintiff Should be Granted Leave to Amend Under Fed. R. Civ. P. 15(a)(2) ................. 23

**IV.    CONCLUSION** ........................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Anani v. CVS RX Servs.*, 730 F.3d 146 (2d Cir. 2012)......................................................*passim*

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County.*,
    137 S. Ct. 1773 (2017)........................................................................................5

*Brock v. Claridge Hotel & Casino*, 846 F.2d 180 (3d Cir. 1988)....................................12

*Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039 (8th Cir. 2020) .............................14

*Cunningham v. Faerber's Bee Window, Inc.*, No. 04-cv-500,
    2005 U.S. Dist. LEXIS 45166 (S.D. Ind. Apr. 19, 2005) ....................................14

*Faludi v. U.S. Shale Sols. LLC*, No. H-16-3467,
    2017 U.S. Dist. LEXIS 196706 (S.D. Tex. Nov. 30, 2017)..................................17

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ....................................................................24

*Hewitt v. Helix Energy Sols. Grp., Inc.*, __ F.4th __,
    2021 U.S. App. LEXIS 27215 (5th Cir. Sept. 9, 2021) (*en banc*).......................*passim*

*Hughes v. Gulf Interstate Field Servs.*, 878 F.3d 183 (6th Cir. 2017)............................*passim*

*Keen v. DXP Enters.*, No. 15-cv-137,
    2016 U.S. Dist. LEXIS 81069 (W.D. Tex. June 6, 2016) ....................................14

*Litz v. St. Consulting Grp., Inc.*, 77 F.3d 1 (1st Cir. 2014)...............................................16,19,20

*Long v. De Feis O'Connell & Rose, P.C.*, No 20-cv-2530,
    2021 U.S. Dist. LEXIS 14341 (S.D.N.Y. Jan. 26, 2021) ....................................24

*McQueen v. Chevron Corp.*, No. C 16-02089,
    2018 U.S. Dist. LEXIS 57751 (N.D. Cal. Apr. 3, 2018) .....................................14

*Scott v. Antero Res. Corp.*, No. 17-cv-693,
    2021 U.S. Dist. LEXIS 95855 (D. Colo. May 20, 2021)......................................17,22

*Snead v. EOG Res., Inc.*, No. 16-cv-1134,
    2018 U.S. Dist. LEXIS 31922 (W.D. Tex. Feb. 13, 2018)...................................14

*Wright-Phillips v. United Airlines, Inc.*, No. 20-cv-14609,
    2021 U.S. Dist. LEXIS 162549 (D.N.J. Aug. 27, 2021)........................................24

i

STATUTES

29 U.S.C. § 207................................................................................................7

29 U.S.C. § 213................................................................................................7


REGULATIONS

29 C.F.R. § 541.100.......................................................................................7,8

29 C.F.R. § 541.200.......................................................................................7,8

29 C.F.R. § 541.300.......................................................................................7,8

29 C.F.R. § 541.600.........................................................................................8

29 C.F.R. § 541.601....................................................................................*passim*

29 C.F.R. § 541.602....................................................................................*passim*

29 C.F.R. § 541.604....................................................................................*passim*

29 C.F.R. § 778.112....................................................................................15,16

29 C.F.R. § 778.113.......................................................................................15


OTHER AUTHORITIES

Defining and Delimiting the Exemptions for Executive, Administrative, Professional,
         Outside Sales, and Computer Employees,
         69 Fed. Reg. 22122, 22174-75 (Apr. 23, 2004).......................................*passim*

Defining and Delimiting the Exemptions for Executive, Administrative, Professional,
         Outside Sales and Computer Employees,
         84 Fed. Reg. 51230, 51249 (Sept. 27, 2019) ........................................9

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2020-13,
         2020 DOLWH LEXIS 22 (Aug. 31, 2020)) ........................................15

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2003-5,
         2003 DOLWH LEXIS 3 (July 9, 2003)................................................15

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2018-25,
    2018 WL 5921453 (Nov. 8, 2018), *available at* https://www.dol.gov/sites/
    dolgov/files/WHD/legacy/files/2018_11_ 08_25_FLSA.pdf .............................21

Fed. R. Civ. P. 15(a)(2)...................................................................................................23,24

## I.  PRELIMINARY STATEMENT

Defendants move to transfer venue to the Southern District of New York and to dismiss Plaintiff's overtime claims because he is a "highly compensated employee" exempt from overtime under the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("WHL"). Plaintiff does not oppose the motion to transfer to the Southern District of New York, which Defendants concede has general personal jurisdiction over them as to all Plaintiff's claims.

With respect to the motions to dismiss, however, Defendants are woefully off the mark. Plaintiff cannot be exempt under the FLSA because he is not paid a guaranteed weekly salary. Among other conditions, the highly compensated employee Department of Labor ("DOL") regulation requires that an exempt employee's overall compensation include "at least $684 per week paid on a salary . . . basis as set forth in [29 C.F.R.] § 541.602." 29 C.F.R § 541.601(b)(1). Section § 514.602, in turn, states an employee is paid on a "salary basis" if he "regularly receives . . . *on a weekly, or less frequent basis,* a predetermined amount constituting all or part of [his] compensation" that "is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a) (emphasis added). The salary basis test, in other words, requires that employees receive a *salary* that covers a period of time that is at least one week long.

Recognizing this problem, Defendants simply excise most of § 541.602(a), including the terms "salary basis," "weekly, or less frequent basis," and "not subject to reduction because of variations in the . . . quantity of work performed." What they are left with is the absurd argument that Plaintiff was paid a "salary" because his $700 per day rate was a "predetermined amount" that exceeds the required $684 per week "salary" amount.

But under no honest reading of the regulations is Plaintiff an exempt employee. The reason is simple: he was paid exclusively on a daily rate and a daily rate, by definition, is not a weekly

1

"salary." Every Circuit to have considered this issue has reached this very conclusion, including the Fifth Circuit sitting *en banc*, the Sixth Circuit, and the Eighth Circuit. The DOL, interpreting its own regulations, also reached this same conclusion last year. So have the vast majority of district courts. Further, permitting a daily rate to be considered a salary would undermine the purposes of the salary basis requirement, which are: (1) to recognize that exempt employees are compensated not for units of their time but rather for the overall value of the services they provide; and (2) to provide exempt employees with the security of the guaranteed receipt of the same amounts on at least a weekly basis throughout the year. Defendants' reliance on *Anani v. CVS RX Servs.*, 730 F.3d 146 (2d Cir. 2012) is puzzling, because the employees in *Anani* were held to be exempt because – unlike Plaintiff – they *were* paid weekly salaries.

Defendants are simply wrong that Plaintiff's receipt of $700 per day can somehow be considered a weekly salary because it exceeds the required $684 salary amount. But even if Defendants were correct, Plaintiff's daily rate was *not* guaranteed to bring him above the required $684 salary threshold each week. As set forth in Plaintiff's proposed Amended Complaint, if he worked less than 5 hours in a week, he would be paid only $350 for that week, which is well below the $684 weekly salary threshold. Plaintiff should be permitted to file his Amended Complaint containing these additional factual allegations, as well as overtime claims under the WHL for a class of New Jersey workers who, like Plaintiff, were paid daily rates for consulting work they performed for SocGen. For all of these reasons, Plaintiff's motion to amend should be granted and Defendants' motions to dismiss denied.

## II.   COUNTERSTATEMENT OF FACTS

### A.   Allegations in the Complaint

Plaintiff Tzvi Klein is a resident of New Jersey who at all relevant times was jointly

employed by Defendants and worked exclusively in New Jersey – first from Defendant SocGen's offices in Jersey City from 2017 until early 2020, and then from Plaintiff's home in Lakewood, New Jersey when the COVID pandemic began. Compl. ¶¶ 10, 13-23. Plaintiff was employed as a Know Your Customer Quality Assurance Analyst. Compl. ¶ 10. His primary duty was to review negative news about SocGen's clients in to detect possible money laundering or other illegal activity by those clients. *Id.* ¶ 11.

For this work, Defendants paid Plaintiff at a rate of $700 per day. *Id.* ¶ 26. When Plaintiff first contracted with Defendants, he was informed the expected workday covered by this rate was an eight-hour workday. *Id.* ¶ 28. There is no allegation that Plaintiff was ever guaranteed any specific weekly salary. *See generally* Compl. Although Plaintiff typically worked at least 50 hours per week, Defendants did not pay him the required overtime premium (1.5 times his regular hourly rate) for those hours worked more than 40 per week. *Id.* ¶¶ 24-25, 27. While Plaintiff was employed by Defendants, there were many other workers hired through Phyton to work in Plaintiff's department at SocGen. *Id.* ¶ 29. Like Plaintiff, these workers were paid a daily rate, worked significant overtime, and were not paid the required overtime premium. *Id.* ¶¶ 29-30.

Plaintiff alleges that Defendants' failure to pay the overtime premium for those hours he worked in excess of 40 per week violated the Fair Labor Standards Act ("FLSA") and New Jersey's Wage and Hour Law ("WHL"). Compl. ¶¶ 56-63. Plaintiff brings his FLSA claims on behalf of himself and a putative FLSA collective described as "individuals who worked as consultants for SocGen on or after the date that is three years before the filing of the complaint and were paid through third parties on 'daily rates.'" *Id.* ¶ 7. According to Defendant SocGen, there are some 952 individuals who may fall into this definition, including 333 who worked in New Jersey and 517 who worked in New York. *See* Lindhorst Decl., Ex. A (Mascari Decl.) ¶ 5.

3

In addition to his wage claims, Plaintiff also brings individual claims of religious discrimination under New Jersey's Law Against Discrimination ("LAD") and whistleblower retaliation under New Jersey's Conscientious Employee Protection Act ("CEPA") against only Defendant Soc Gen. Comp. ¶¶ 64-73.

**B.      Allegations in Plaintiff's Proposed Amended Complaint**

As detailed below, Plaintiff respectfully moves this Court for leave to amend his complaint to add three factual allegations and to bring his WHL overtime claims on behalf of a Rule 23 Class consisting of "all individuals who worked as consultants for Defendant SocGen in the State of New Jersey on or after the date that is six years before the filing of this complaint and were paid through third parties on "daily rates." *See* Buzzard Decl., Ex. A (Proposed Am. Compl.) ¶¶ 37-39 (factual allegations), ¶¶ 10-17, 42 (Rule 23 class allegations). The factual allegations Plaintiff proposes to add are that: (1) his contract provided that if he worked less than 5 hours in a day, that is considered a half day; (2) there were multiple occasions he when he had to leave work early and was paid for only half of a day, i.e. $350; and (3) he had an arrangement with certain managers that if he had to leave work early on a Friday for religious reasons, he would be required to make up the hours he missed on other days of the week in order to still be paid the full daily rate for the Friday he left early. *Id.* ¶¶ 37-39.

Plaintiff seeks to add the Rule 23 class allegations based on the Declaration of Irene Mascari submitted to this Court by Defendant SocGen, which states there are some three hundred and thirty-three (333) individuals who worked at a location in New Jersey at some point in the period from 2018 through 2020 for whom a SocGen company "paid a third party a daily rate." *See* D.N.J. Dkt No. 21-cv-12171, ECF Entry No. 14-3, Ex. A (Mascari Decl.) ¶ 5. This fact was unknown to Plaintiff prior to the filing of Ms. Mascari's declaration on August 31, 2021.

4

## III.   ARGUMENT

### A.   Plaintiff Does not Oppose Defendants' Motions to Transfer on the Ground that the Southern District of New York has General Personal Jurisdiction over Defendants with Respect to all Claims Alleged

Defendants' primary argument for transferring this matter to the United States District Court for the Southern District of New York ("SDNY") is that this Court lacks valid personal jurisdiction over Defendants with respect to claims of putative FLSA collective members who performed work outside of New Jersey, whereas the SDNY has valid general jurisdiction over Defendants. *See* SocGen Mem. at 5; Phyton Mem. at 4-5. Defendants' arguments are based on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty*, 137 S. Ct. 1773 (2017), which held that California courts lacked specific personal jurisdiction over non-resident plaintiffs' claims in a mass action against a non-resident defendant arising from conduct that occurred outside of California. Given Defendants' concession that the SDNY has general personal jurisdiction as to the claims of all potential FLSA collective members, Plaintiff does not oppose Defendants' motions to transfer venue on this ground.

### B.   Plaintiff Alleges Plausible Claims of Overtime Violations Under the Fair Labor Standards Act and the New Jersey Wage and Hour Law

Defendants argue Plaintiff is not entitled to overtime under the FLSA or WHL because he falls into an overtime exemption for "highly compensated" employees that has been adopted by the United States Department of Labor ("DOL") and codified at 29 C.F.R. § 541.601. SocGen Mem. at 18; Phyton Mem. at 7. Under that regulation, as relevant here, an employee is exempt from the FLSA's overtime requirement if the following requirements are met: (1) the employee has "total annual compensation of at least $107,432," 29 C.F.R. § 541.601(a)(1); (2) the employee "customarily and regularly performs any one or more off the exempt duties or responsibilities of

an executive, administrative, or professional employee" identified in other parts of the regulations, *id.*; and (3) the employee's "total annual compensation" includes "at least $684 per week paid on a salary . . . basis as set forth in § 541.602," *id.* § 541.601(b)(1).

Defendants' argument is centered on § 541.601's third requirement – that Plaintiff's total annual compensation include "at least $684 per week paid on a salary . . . basis as set forth in § 541.602." Despite the fact that Plaintiff was paid *only* a daily rate for his work, *see* Compl. ¶ 26, Defendants wrongly argue he was paid on a "salary basis" because the $700 day rate was a "predetermined amount" constituting part of his compensation, and that amount exceeds $684 per week. *See* SocGen Br. at 19; Phyton Br. at 8-9. Defendants' contention that a daily rate is somehow a "salary" is based on a complete misinterpretation of the highly compensated employee regulation and the salary basis test "set forth in § 541.602," which explicitly calls for the employee to receive "a predetermined amount" on a "weekly, or less frequent basis" that "is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a). The salary basis test, in other words, explicitly requires that employees receive a *salary* that covers a period of time that is at least one week long.

A daily rate is not a weekly salary. The argument that it could be not only does violence to the plain language of § 541.602(a) but has been rejected by every Circuit to have considered the issue, including the *en banc* Fifth Circuit, the Sixth Circuit, and the Eighth Circuit, as well as the vast majority of District Courts. It also conflicts with the DOL's interpretation of § 541.602 in several DOL opinion letters. Further, permitting a daily rate to be considered a salary would undermine the very purposes of the DOL's salary basis requirement, which aims to provide exempt employees with (a) the security provided by the guaranteed receipt of the same amounts on at least a weekly basis throughout the year; (b) recognition that as exempt employees they are

6

compensated for the value of their services, not their units of time; and (c) the freedom and discretion to manage their own time. Finally, Defendants' reliance on the Second Circuit's decision in *Anani* is misplaced because that decision involved only employees who *were* paid weekly salaries and not, like here, a daily rate.

For the above reasons, Defendants are wrong that Plaintiff's receipt of $700 per day can be considered a salary simply because it guaranteed he earned more than the required $684 salary amount each week. But even if Defendants' interpretation were correct, Plaintiff's daily rate was *not* guaranteed to bring him above the required $684 salary threshold because as set forth in the proposed Amended Complaint if he worked less than 5 hours in one day, he was paid for only half his rate for that day, or $350. For all of these reasons, which are set forth in depth below, Defendants' motion to dismiss should be denied.

### 1. The FLSA's Overtime Requirement and Regulatory Exemptions for Bona Fide Executive, Administrative, or Professional Employees

In general, the FLSA requires that employees receive overtime wages for those hours worked over 40 per week, except as "otherwise provided." 29 U.S.C. § 207(a). Congress has authorized the Secretary of Labor to exempt certain employees from the FLSA's overtime requirement, including "bona fide executive, administrative, or professional employees." 29 U.S.C. § 213. Pursuant to this authority, the Department of Labor ("DOL") has promulgated a number of regulations addressing each of these types of exempted employees. *See* 29 C.F.R. §§ 541.100 (executive employees), 541.200 (administrative employees), 541.300 (professional employees). Each of the "standard" exempted categories of employees – executive, administrative, and professional – has an associated "duties test" that must be met before an employee may be exempted under one of those categories. *See* 29 C.F.R. §§ 541.100(a)(2)-(4) (executive

7

employees), 541.200(a)(2)-(3) (administrative employees), 541.300(a)(2) (professional employees). In addition to the duties test, to qualify as an exempt executive, administrative, or professional employee the individual (a) "must be compensated on a salary basis" (the "salary basis test") and (b) that salary may not fall below a specific weekly salary level, currently "not less than $684 per week" (the "salary level test"). 29 C.F.R. § 541.600(a).

### 2. The Regulatory Exemption for "Highly Compensated" Executive, Administrative, or Professional Employees Relaxes the Duties Test but Retains the Weekly Salary Basis Requirement

Along with these "standard" exemptions, the Department of Labor has promulgated somewhat of a catchall regulation dealing with "highly compensated" executive, administrative, or professional employees. *See* 29 C.F.R. §§ 541.601. When adopting § 541.601, the current version of the highly compensated employee rule, the DOL explained that its purpose was to provide "a more streamlined duties test" for those employees who are compensated at higher levels. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, 69 Fed. Reg. 22122, 22174-75 (Apr. 23, 2004). Thus, as set forth in 29 C.F.R. § 541.601(a)(1), an employee who receives "total annual compensation of at least $107,432 is deemed exempt" from overtime if he meets a more relaxed duties test than those applicable to the "standard" executive, administrative, and professional exemptions.[1] But although the duties test is relaxed, § 541.601(b)(1) retains both the salary level and salary basis requirements for highly compensated employees by providing that the employee's "'[t]otal annual compensation' must include at least $684 per week" (the salary level) that is "paid on a salary . . . basis *as set forth in § 541.602.*" 29 C.F.R. § 541.601(b)(1) (emphasis added); *see Hughes v. Gulf Interstate Field Servs.*, 878 F.3d 183, 188 (6th Cir. 2017) ("Under 29 C.F.R. § 541.601, an

---

[1] Prior to January 1, 2020, the required total annual compensation was $100,000. 29 C.F.R. § 541.601(a)(1) (2019).

employee qualifies as an exempt highly compensated employee if three tests are met: (1) a duties test; (2) a salary-level test; and (3) a salary-basis test." (cleaned up)).   By incorporating *§ 541.602*, the regulation explicitly requires that the highly compensated be paid a guaranteed amount "on a weekly, or less frequent basis." 29 C.F.R. § 541.602(a).

When the DOL was adopting § 541.601, its initial proposed rule contained only a total annual compensation *amount* requirement that was conditioned on that compensation being "paid out to the employee as due on at least a monthly basis." *See* 69 Fed. Reg. at 22172 ("Subsection (b) of the proposed rule defined 'total annual compensation' to include 'base salary, commissions, non-discretionary bonuses and other non-discretionary compensation' as long as that compensation was 'paid out to the employee as due on at least a monthly basis.'"). But the DOL ultimately rejected that approach in its final rule, which instead adopted the weekly *salary basis* requirement set forth in § 541.601(b)(1) "that the total annual compensation [of a highly compensated employee] must include at least $455 per week paid on a salary basis." *Id.* As the DOL explained, the weekly salary requirement contained in the final version of § 541.601(b)(1) is a "safeguard against possible abuses," which "ensure[s] that highly compensated employees will receive at least the same base salary throughout the year as required for exempt employees under the standard [executive, administrative, or professional] tests, while still allowing highly compensated employees to receive additional income." 69 Fed. Reg. at 22175; *see also* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230, 51249 (Sept. 27, 2019) (explaining that the highly compensated employee "must receive at least the standard salary level each pay period on a salary . . . basis, while the remainder of the employee's total annual compensation may include commissions, nondiscretionary bonuses, and other nondiscretionary compensation"). "[T]he

salary basis requirement," the DOL went on, "is a valuable and easily applied criterion that is a hallmark of exempt status." 69 Fed. Reg. at 22175.

When adopting the current weekly salary basis requirement in its final rule now codified in 29 C.F.R. § 541.602 (which is cross-referenced in § 541.601(b)(1)), the DOL explained that it had "determined over the course of many years that executive, administrative and professional employees are nearly universally paid on a salary basis," which "reflects the widely-held understanding that employees with the requisite status to be bona fide executives, administrators or professionals have discretion to manage their time." *Id.* at 22177. These employees, the DOL went on, "are not paid by the hour or task, but for the general value of services performed." *Id.*; *see also id.* at 22176-77 (referencing a 1944 DOL Release noting that bona fide executive, administrative and professional employees "should generally be free to go home early or occasionally take a day off without reduction in pay").

The weekly salary basis requirement is thus a crucial component of the highly compensated employee exemption, the purposes of which are to (a) recognize that exempt employees are entitled to discretion to manage their time and, (b) "safeguard against possible abuses" of the highly compensated exemption by ensuring that highly compensated employees receive the same weekly base salary as employees who meet the requirements of the standard exemptions. Section 541.601(b)(1) makes the importance of the salary basis requirement explicit by requiring that a component of highly compensated employees' total compensation include minimum weekly amounts "paid on a salary . . . basis as set forth in § 541.602." 29 C.F.R. § 541.601(b)(1).

### 3. *Defendants Misinterpret and Effectively Eliminate the Salary Basis Requirement for Highly Compensated Employees.*

The salary basis requirement "set forth" in 29 C.F.R. § 541.602 – which applies to

individuals who are highly compensated under § 541.601 – provides:

> An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period *on a weekly, or less frequent basis*, a predetermined amount constituting all or part of the employee's compensation, which amount is *not subject to reduction because of variations in the quality or quantity of the work performed*.

29 C.F.R. § 541.602(a) (emphasis added). It further provides that, subject to certain exceptions set forth in § 541.602(b) not relevant here, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.* § 541.602(a)(1). In other words, the salary basis test requires a guaranteed payment that is keyed to a period that is one week or longer.

Ignoring the language of § 541.602 italicized above, Defendants argue that Plaintiff's daily rate satisfies the salary basis test. They posit that the $700 day rate is a "predetermined amount" that constituted "part" of Plaintiff's compensation. SocGen Mem. at 19-20; Phyton Mem. at 8-9. Because that "predetermined amount" exceeds § 541.601(b)(1)'s required salary level of $684 per week, Defendants contend that the test set forth in § 541.602(a) has been met. *See id.*

The problem with Defendants' reasoning is that it myopically focuses only on the *amount* of compensation and completely ignores the requirement that the amount is paid on at least a *weekly salary basis*, i.e. that it is keyed to a period of one week or more. *Any* amount paid an employee for *any* increment of time – be it hour, shift, or day – is a "predetermined amount" that constitutes "part" of the employee's overall compensation. Under Defendants' reasoning, so long as the amount paid for one increment of time exceeds the $684 weekly salary level, the salary basis test has been met. Following Defendants' logic, an employee paid $684 per shift is paid on a "salary basis." So is an employee paid $684 per hour. In other words, whether an employee earns

11

a weekly salary or not is irrelevant to Defendants' analysis—only the "predetermined amount" and whether that amount exceeds the salary level matters.

But this completely ignores the crux of what the DOL was attempting to achieve by imposing the salary basis requirement, which was to recognize that exempt employees historically *are not paid for units of time*. As noted above, in 2004 the DOL chose the salary basis requirement over its initial proposal to tie the highly compensated employee exemption to simply total annual compensation "paid out" over at least monthly increments. *See* 69 Fed. Reg. at 22172. When adopting section 541.602's current salary basis test at that same time, the DOL also rejected calls to "abandon the salary basis test entirely" because it "serves as a barrier to the appropriate classification of exempt employees." *Id.* at 22176. Instead, as set forth above, after surveying some sixty years of historical practices, the DOL found that the salary basis requirement was a "hallmark" of exempt status, which reflects that exempt employees are paid *not* by units of time "but for the general value of services performed" and should have "discretion to manage their time." *Id.* at 22176-77; *see also id.* (referencing a 1944 DOL Release noting that bona fide executive, administrative and professional employees "should generally be free to go home early or occasionally take a day off without reduction in pay").

The courts have long recognized this function of the weekly salary requirement. Describing the difference between salaried and hourly employees, the Third Circuit has explained that "the salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it." *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184 (3d Cir. 1988). By contrast, with employees whose compensation is keyed to smaller units of time, "it is the employer who decides the worth of a particular task, when he determines the amount to pay the employee performing it." *Id.* Much more recently, the *en banc* Fifth Circuit explained that "[a]s a

12

matter of common parlance, we typically associate the concept of 'salary' with the stability and security of a regular weekly, monthly, or annual pay structure. By contrast, we do not ordinarily think of daily or hourly wage earners—whose pay is subject to the vicissitudes of business needs and market conditions—as 'salaried' employees." *Hewitt v. Helix Energy Sols. Grp., Inc.*, __ F.4th __, 2021 U.S. App. LEXIS 27215, at *4 (5th Cir. Sept. 9, 2021) (*en banc*).

The salary basis requirement is thus a mark of both status and security for the exempt employees, including "highly compensated" employees. *See* 69 Fed. Reg. at 22177 (explaining that "payment on a salary basis reflects an employee's discretion to manage his or her own time and to receive compensatory privileges commensurate with exempt status"). By requiring that the highly compensated employee receive part of her total compensation (at least $684 per week) "paid on a salary . . . basis as set forth in § 541.602," 29 C.F.R. § 541.601(b)(1) strikes a balance – in exchange for being exempted from overtime, the highly compensated employee enjoys the freedom and security provided by the guarantee that she will receive "each pay period on a weekly, or less frequent basis, a predetermined amount" that "is not subject to reduction because of variations in the quality or quantity of work performed," 29 C.F.R. § 541.602(a).

### 4. An Employee Paid at a Daily Rate is not Paid on a "Salary Basis" because the Smallest Increment of Time for Which Compensation must be Calculated and Guaranteed to be Considered a "Salary" is One Workweek.

Given the purposes of the salary basis requirement and the plain language of § 541.602(a) and (a)(1) that the "predetermined amount" must (1) be received on a "weekly, or less frequent basis," (2) not be "subject to reduction because of variations in the quality or quantity of work performed," and (3) be received in full "for any week in which the employee performs any work without regard to the number of days or hours worked," it is clear that a *week* is the smallest increment of time for which the "predetermined" salary must be computed and guaranteed in order

to meet the salary basis test. This reading is confirmed by the decisions of *every* Circuit court to have considered the issue, which have all concluded that unless an exception set forth in § 541.604(b) applies (discussed below), a daily rate is inconsistent with being paid on a salary basis. *See Hewitt*, 2021 U.S. App. LEXIS 27215, at *3-6, 37 (employee paid a rate of $963 per day did not meet the salary basis test and was not an exempt highly compensated employee because his salary was not computed on at least a weekly basis and the employer did not comply with the requirements of § 541.604(b)); *Hughes*, 878 F.3d at 189 (employees whose compensation was calculated at a rate of $337 per day worked did not meet the "textual prerequisites" of the salary basis test set forth in § 541.602(a)); *see also Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1048 (8th Cir. 2020) (agreeing with the Sixth Circuit in *Hughes* that "it is legally significant whether [an employee's] weekly salary was a matter of right or a matter of grace").

Similarly, the vast majority of District Courts have found that a daily rate by definition cannot meet § 514.602(a)'s salary basis test, regardless of whether it exceeds the applicable salary level requirement. *See McQueen v. Chevron Corp.*, No. C 16-02089, 2018 U.S. Dist. LEXIS 57751, at *3-4 (N.D. Cal. Apr. 3, 2018) (daily rate of $1,000 did not meet the salary basis test because there was no evidence the employees "were guaranteed a weekly amount over $455"); *Snead v. EOG Res., Inc.*, No. 16-cv-1134, 2018 U.S. Dist. LEXIS 31922, at *9-10 (W.D. Tex. Feb. 13, 2018) (granting employee's summary judgment motion on the exemption issue because the employer's day rate plan did not satisfy the salary basis test); *Keen v. DXP Enters.*, No. 15-cv-137, 2016 U.S. Dist. LEXIS 81069, at *16 (W.D. Tex. June 6, 2016) (arrangement under which the employee received a day rate "is not pay on a salary basis as required to maintain the administrative exemption" from the overtime requirement); *Cunningham v. Faerber's Bee Window, Inc.*, No. 04-cv-500, 2005 U.S. Dist. LEXIS 45166, at *9 (S.D. Ind. Apr. 19, 2005) (employee "paid per day of

14

work . . . was paid more frequently than the minimum weekly requirement for salaried employees" and "does not fit the definition of a salaried employee").

The DOL is in lockstep with these courts. In a recent opinion letter interpreting its salary basis regulation, the DOL explained that flat daily payments of $1,500 for delivery work "did not meet" the salary basis test because: (a) they "are not a predetermined amount" given that they fluctuate based on the number of days worked during the week; and (b) "the amounts are not calculated on a weekly or less frequent basis" but are rather "based on the number of days worked." *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2020-13, 2020 DOLWH LEXIS 22, *8-9 (Aug. 31, 2020); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2003-5, 2003 DOLWH LEXIS 3, at *4-5 (July 9, 2003) ("Payment on an hourly basis without an operative salary guarantee does not qualify as a 'salary basis' within the meaning of the regulations.").

Finally, the structure of other regulations promulgated under the FLSA confirm that the DOL equates a "salary" with an employee being compensated in increments of time no less than one workweek, and that a daily rate is not a "salary." Specifically, the regulations setting forth the principles for computing overtime pay based on the "regular rate" explicitly differentiate between "salaried employees," which are addressed in 29 C.F.R. § 778.113, and "day rates and job rates," which are dealt with in § 778.112. The "salaried employee" regulation contains instructions for calculating overtime when an employee is paid a "weekly salary," 29 C.F.R. § 778.113(a), and when the salary covers a period "longer than a workweek," including a "monthly salary" and a "semimonthly salary," *id.* § 778.113(b). Notably, there is nothing in the "salaried employee" regulation explaining how to calculate overtime on a "daily salary." *See* 29 C.F.R. § 778.113. Those calculations are reserved for the "day rates and job rates" regulation, which is devoid of any

mention of the term "salary." 29 C.F.R. § 778.112.

>    **5.  Plaintiff – Who Received only a Daily Rate and was not Guaranteed a Weekly Salary – was not Paid on a Salary Basis "as Set Forth in § 541.602" and Therefore Does not Qualify as an Exempt Highly Qualified Employee Under § 541.601.**

This overwhelming authority conclusively demonstrates that Plaintiff does not meet § 541.601's requirements of an exempt highly compensated employee because his full $700 daily rate – which was calculated by the day, not the week – does not constitute being paid on a "salary basis as set forth in § 541.602." 29 C.F.R. § 541.601(b)(1). Defendant SocGen argues, however, that "numerous courts have concluded that day rates and similar predetermined amounts constituting only part of an employee's compensation satisfy the salary basis requirement for the highly compensated exception." SocGen Mem. at 19-20 (citing four cases). SocGen's phrase "similar predetermined amounts" is patently misleading. In two of the four cases SocGen cites (and the only two Circuit court decisions), the "predetermined amounts" were not "similar" to "day rates" as the employees were guaranteed and received *weekly* salaries. Unsurprisingly, the First and Second Circuits easily concluded that such weekly salaries satisfied the salary basis test. *See Anani.*, 730 F.3d at 148 ("There is also no dispute that appellant's base weekly salary was guaranteed, i.e. to be paid regardless of the number of hours appellant actually worked in a given forty-four-hour shift. The requirements of . . . 541.602 are thus satisfied with regard to the minimum guaranteed weekly amount being paid 'on a salary basis.'"); *Litz v. St. Consulting Grp., Inc.*, 77 F.3d 1, 4 (1st Cir. 2014) ("There is no dispute that the stipend was a predetermined amount of $1,000 per week."); *id.* at 5 ("Since [the stipend] was both 'predetermined' and 'not subject to reduction because of variations in the quality or quantity of work performed,' it plainly qualifies as a payment on a 'salary basis.'"). *Anani* and *Litz* are thus of no help to Defendants here because

16

they paid Plaintiff a daily rate with no weekly guarantee at all. Compl. ¶ 26. To be sure, in their respective decisions holding that daily rates did not satisfy the salary basis requirement, the Fifth and Sixth Circuits explained that that their decisions were completely consistent with *Anani* and *Litz* on this very ground. *Hewitt*, 2021 U.S. App. LEXIS 27215, at *17 (explaining there was "no actual conflict" with *Anani* and *Litz* because those cases "involve pay calculated on a weekly, or less frequent basis" (quotation marks omitted)); *Hughes*, 878 F.3d at 189-90 (same).

With respect to SocGen's two remaining cases that actually deal with daily rates, one, *Faludi v. U.S. Shale Sols. LLC*, No. H-16-3467, 2017 U.S. Dist. LEXIS 196706 (S.D. Tex. Nov. 30, 2017), was conclusively overruled by the *en banc* Fifth Circuit in *Hewitt*. The other, *Scott v. Antero Res. Corp.*, is the only (not yet overruled) decision Plaintiff could locate in the entire country that has held, consistent with Defendants' arguments here, that an employee who is paid a daily rate higher than the salary level test is paid on a "salary basis" under § 514.602. No. 17-cv-693, 2021 U.S. Dist. LEXIS 95855, at *16 (D. Colo. May 20, 2021) ("Plaintiffs were compensated on a salary basis because their day rate guaranteed them $1,000 for every day that they worked and thus, *perforce*, they would receive more than the minimum of $455 per week for any week in which they performed *any* work."). Given that *Scott* is a complete outlier that conflicts with the wealth of authority outlined above, defeats the very purposes of the salary requirement, and reads the salary *basis* test out of the Code of Federal Regulations, there is no reason to follow its crabbed reading of § 514.602. It is also worth noting that *Scott* is currently on appeal in the Tenth Circuit. *See Scott v. Antero Res. Corp.*, No. 21-1188 (10th Cir.).

In sum, the conclusion that Plaintiff's daily rate does not satisfy § 514.602's salary basis test is confirmed by: (1) the text of § 514.602(a); (2) all the Circuits to have considered the issue; (3) the overwhelming majority of district courts to have considered the issue; (4) the DOL's 2020

17

opinion letter; (5) the purposes of the salary requirement as explained by the DOL in adopting

514.602 and for some sixty years prior to that; and (6) the text and structure of other sections of

the DOL regulations that specifically address the calculation of overtime for salaried employees

and employees paid a daily rate. Because Plaintiff was not "paid on a salary . . . basis as set forth

in § 541.602," he does not meet the exemption requirement of § 541.601(b)(1). Accordingly, he is

not an exempt employee and must be paid overtime wages for all hours worked over 40 per week.

> **6.  *Defendants' Tortured Interpretation of Anani and Litz with Respect to 29
> C.F.R.  § 604(b) Does Not Absolve them of the Weekly Salary Basis
> Requirement.***

The above analysis should in and of itself end the matter – Plaintiff is not exempt because

his daily rate does not meet the requirements of the salary basis test "as set forth in § 541.602."

Nevertheless, Defendants attempt to muddy the waters by relying on *Anani* and *Litz* to contend

that the requirements of a different regulation – 29 C.F.R. § 541.604(b), which "deals with

employees who earn the minimum guarantee plus extras" – do not apply to highly compensated

employees. *Anani*, 730 F.3d at 149 (cleaned up); *see* SocGen Mem. at 20-23; Phyton Mem. at 9-

10. Section 541.604(b) provides that:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift
> basis, without losing the exemption or violating the salary basis requirement, if the
> employment arrangement also includes a guarantee of at least the minimum weekly
> required amount paid on a salary basis regardless of the number of hours, days or
> shifts worked, and a reasonable relationship exists between the guaranteed amount
> and the amount actually earned.

29 C.F.R. § 541.604(b). Under § 541.604(b) "a daily-rate worker can be exempt from overtime—

but only if two conditions are met: the minimum weekly guarantee condition and the reasonable

relationship condition." *Hewitt*, 2021 U.S. App. LEXIS 27215, at *5.

Relying on *Anani* and *Litz*, Defendants argue that § 54.1604(b) does not apply to highly

compensated employees like Plaintiff. To reiterate, *Anani* and *Litz* both dealt with situations, unlike here, where highly compensated employees *were* indisputably paid guaranteed weekly salaries that independently satisfied the requirements of §§ 541.601 and 541.602. *See Litz*, 77 F.3d at 5; *Anani*, 730 F.3d at 148. The plaintiffs in those cases sought to rely on § 541.604(b) to show they were nonetheless not exempt because their *weekly* salaries bore no "reasonable relationship" to the amounts they actually earned. In that situation, the Second Circuit found that grafting the § 541.604(b) "reasonable relationship" test onto the § 541.601 highly compensated employee exemption made no sense. *Anani*, 730 F.3d at 149 ("We perceive no cogent reason why the requirements of C.F.R. § 541.604 must be met *by an employee meeting the requirements of C.F.R. § 541.601,*" which incorporates § 541.602's guaranteed salary requirement.)  (emphasis added).. *Litz* simply followed suit with *Anani*. *Litz*, 77 F.3d at 5 (citing *Anani*).

Faced with highly compensated employees paid *daily rates*, by contrast, the Fifth and Sixth Circuits found that § 541.604(b) may apply. As *Hewitt* framed the issue: because § 541.601(b)(1) requires that an employee's total annual compensation include "at least $684 per week paid on a salary . . . basis," the employee "cannot be a highly compensated employee under § 541.601 unless his total annual compensation satisfies the salary-basis test. And the only way for an employee to have his pay computed on a daily basis without violating the salary basis requirement is to comply with § 541.604(b)." *Hewitt*, 2021 U.S. App. LEXIS 27215, at *15; *see Hughes*, 878 F.3d at 189-91 (surveying §§ 541.602, 541.604(b), *Anani*, and *Litz* and concluding it "need not decide" whether § 541.604(b) was the "controlling source of evidence" supporting the requirement of a guaranteed weekly salary as § 541.602 "itself indicates the importance of a guarantee").

Whatever daylight may exist between *Anani* and *Litz* on the one hand, and *Hughes* and *Hewitt* on the other with respect to application of § 541.604(b) to highly compensated employees,

the crucial point of agreement among all four Circuits is that, by requiring highly compensated employees be paid on a salary basis "as set forth in § 541.602," § 541.601 *itself* imposes the requirement of a weekly salary. *See Anani*, 730 F.3d at 148; *Litz*, 77 F.3d at 4-5; *Hughes*, 878 F.3d at 191; *Hewitt*, 2021 U.S. App. LEXIS 27215, at *15. Indeed, both *Hughes* and *Hewitt* explained that, because of the inherent differences between a daily rate and the guaranteed weekly salary, their decisions were completely harmonious with *Anani* and *Litz*. Specifically, both Circuits concluded that there was "no actual conflict" between: (1) refusing to apply § 541.604(b)'s reasonable relationship test to highly compensated employees *with* guaranteed weekly salaries who therefore met § 541.601; and (2) applying the reasonable relationship test to highly compensated daily rate employees to determine whether they met the salary basis test *notwithstanding* their daily rate of pay. *See Hughes*, 878 F.3d at 190 (noting that applying § 541.604(b) to highly compensated daily rate employees did not "contravene the decisions of our sister circuits"); *Hewitt*, 2021 U.S. App. LEXIS 27215, at *17 (explaining "there is no actual conflict" between applying § 541.604(b) to highly compensated daily rate employees and the holdings of *Anani* and *Litz*).

### 7. *Plaintiff Does Not Meet Either Condition of 29 C.F.R. § 541.604(b).*

As noted above, under § 541.604(b) "a daily-rate worker can be exempt from overtime—but only if two conditions are met: the minimum weekly guarantee condition and the reasonable relationship condition." *Hewitt*, 2021 U.S. App. LEXIS 27215, at *5. Here, Defendants do not argue that they meet either condition—they simply argue that it does not apply to highly compensated employees. But for the sake of completeness, it is clear Defendants cannot meet either of § 541.604(b)'s conditions had they tried to make the argument.

First, Plaintiff's employment arrangement did not include a "guarantee of at least the minimum weekly required amount [($684)] paid on a salary basis," 29 C.F.R. § 541.604(b), but

was simply that he would be paid a flat daily rate of $700. Compl. ¶ 26.

Second, even if Plaintiff's day rate constituted a weekly guarantee (it does not), Defendants cannot show that their daily rate arrangement satisfied § 541.604(b)'s "reasonable relationship" condition. A "reasonable relationship" exists when "the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." 29 C.F.R. § § 541.604(b). The DOL explains that "a 1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, FLSA2018-25, 2018 WL 5921453, at *2 (Nov. 8, 2018), *available at* https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2018_11_08_25_FLSA.pdf (explaining further that "usual earnings that are nearly 1.8-times—close to double—the guaranteed weekly salary materially exceed the permissible ratios found in the regulations and are not roughly equivalent to that salary under § 541.604(b)"). Here, every time Plaintiff worked more than one day in a week (which he regularly did), his purported "guaranteed weekly salary" – $700 per day – bears no reasonable relationship to his actual earnings. If Plaintiff worked just two days per week, for example, his actual earnings to weekly guaranteed salary would be an impermissible 2-to-1 ratio ($1,400-to-$700). Thus, Defendants are not entitled to the exception to the salary basis requirement set forth in § 541.604(b) even if that provision applied.[2]

---

[2] Defendant SocGen argues in a footnote "that the day rate would still satisfy the 'reasonable relationship' test even if it applied because the day rate and the amount actually earned are both calculated in reasonable relationship to each other – based on the same day rates." SocGen Mem. at 22 n.6 (citing *Anani*, 730 F.3d at 149 n.3 ("An open question is whether this provision requires that the reasonable relationship be between the guaranteed 'hourly, daily, or shift' amount reduced to an hourly, daily, or shift rate of pay and the hourly, daily, or shift rate by which pay for extra work is calculated, rather than between the total of guaranteed earnings and total earnings.")). As demonstrated by the DOL's 2018 Opinion Letter (issued several years after *Anani*), however, the proper reasonable relationship analysis is "between the total guaranteed earnings and total earnings." *See* FLSA2018-25, 2018 WL 5921453, at *2 ("Because your client's employees receive

### 8.   *Conclusion – the Allegations in Plaintiff's Original Complaint Demonstrate he is Not Exempt Under §§ 541.601 or 541.604(b).*

At bottom, the debate about whether § 541.604(b) may be applied to highly compensated employees is a red herring. Unlike the *Anani* and *Litz* plaintiffs, Plaintiff does not need to rely on the "reasonable relationship" test in § 541.604(b) to demonstrate he is not an exempt employee. Thus, the question of whether § 541.604(b) can never apply to highly compensated employees, or only applies to highly compensated employees paid at daily rates, is purely academic in this case. If § 541.604(b) does apply, Plaintiff cannot be exempt because he clearly does not meet its the requirements, as shown above. If § 541.604(b) does not apply, Plaintiff plainly cannot be exempt because his daily rate does not meet the salary basis requirements of §§ 541.601 and 541.602 in and of itself. Under any reading of the interplay between §§ 541.601 and 541.604(b), therefore Plaintiff is not an exempt highly compensated employee and is entitled to receive overtime.

### 9.   *The Allegations in Plaintiff's Proposed Amended Complaint Demonstrate He Would not be an Exempt Highly Qualified Employee Even Under Defendants' Interpretation of the Salary Basis Test.*

As a final matter, even if it were to be assumed that Defendants' interpretation of the salary basis test is correct, the allegations in Plaintiff's proposed amended complaint demonstrate that he *still* would not meet the test. *Scott*, the only authority supporting Defendants' position that has not been overruled, held that employees are "compensated on a salary basis" when their day rate "guarantee[s] them" an amount above the salary level threshold "for every day that they work[]," thus ensuring that they receive more than the salary level threshold "for any week in which they

---

a guaranteed weekly salary of $2,100, any usual weekly earnings up to $3,150 will satisfy the "reasonable relationship" test ($2,100 × 1.5). Usual earnings of $3,761, however, materially exceed a 1.5-to-1 ratio and are not "roughly equivalent" to the guaranteed weekly salary of $2,100." (citations omitted)).

22

performed *any* work." *Scott*, 2021 U.S. Dist. LEXIS 95855, at *16. ("If Plaintiffs worked for even one hour in a given week, they were guaranteed $1,000, which far exceeds the regulatory minimum of $455 per week.").

Here, however, the allegations in the amended complaint show that Plaintiff was *not* "guaranteed" an amount above $684 (the applicable salary level threshold) for every day that he worked—if he worked less than five hours in one day that was considered a "half day" and he was paid only $350. Am. Compl. ¶¶ 37-38. Unlike the *Scott* plaintiffs, therefore, Plaintiff here was not guaranteed to "receive more than the minimum of [$684] per week for any week in which [he] performed *any* work." *Id.* If he worked only 4 hours one week, he would receive only $350 for that week, well below the $684 weekly minimum. Moreover, the fact that Plaintiff's $700 daily rate could be reduced if he worked only half a day demonstrates that the $700 day rate is not a "predetermined amount" that is "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). This pay structure indicates that, unlike a truly exempt employee, Plaintiff was not being paid for the value of his services, but rather for his units of time. Thus, the allegations in Plaintiff's proposed Amended Complaint conclusively demonstrate he is not an exempt highly compensated employee even under Defendants' own interpretation. For the reasons discussed below, Plaintiff should be granted leave to amend to add these allegations and class claims of overtime violations under the WHL.[3]

### C.    Plaintiff Should be Granted Leave to Amend Under Fed. R. Civ. P. 15(a)(2)

Plaintiff respectfully moves to be granted leave to file his proposed Amended Complaint

---

[3] Defendants concede that the WHL incorporates the FLSA's exemptions, so the above analysis is equally applicable to the WHL. *See* SocGen Mem. at 18; Phyton Mem. at 11.

pursuant to Fed. R. Civ. P. 15(a)(2). Specifically, Plaintiff seeks to add: (1) factual allegations that he was not guaranteed to earn $700 per day because if he worked less than five hours he was paid for only a half day at $350; and (2) class claims of overtime violations under the WHL on behalf of a putative class of individuals who worked as consultants for Defendant SocGen in the State of New Jersey and were paid through third parties on "daily rates." *See* Buzzard Decl., Ex. A (Proposed Am. Compl.) ¶¶ 37-39 (factual allegations), ¶¶ 10-17, 42 (Rule 23 class allegations).[4]

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." "Under this liberal standard, a motion for leave to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Long v. De Feis O'Connell & Rose, P.C.*, No 20-cv-2530, 2021 U.S. Dist. LEXIS 14341, at *14-15 (S.D.N.Y. Jan. 26, 2021) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Wright-Phillips v. United Airlines, Inc.*, No. 20-cv-14609, 2021 U.S. Dist. LEXIS 162549, at *9 (D.N.J. Aug. 27, 2021) ("Under *Foman*, in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant leave to amend.").

Here, Plaintiff has not acted in bad faith or undue delay. Both proposed amendments are in direct response to arguments raised and evidence submitted by Defendants in their motions to transfer/dismiss, which were filed less than two months ago, on August 31, 2021. Further, although Plaintiff knew there were other employees who he worked with that were paid on daily rates and thus could be members of a putative FLSA collective, *see* Compl. ¶¶ 7-9, 29-30, the fact that there were hundreds of potential class members in New Jersey was not known to Plaintiff or his attorneys

---

[4] Should the Court require Plaintiff to file a formal notice of motion to amend, he will do so forthwith.

24

until Defendant SocGen filed the declaration of its employee, Irene Mascari, in connection with its motion to dismiss, *see* ECF No. 14-3, Ex. A (Mascari Decl.) ¶ 5 (stating that there are some 333 individuals who worked in New Jersey for whom Defendant SocGen paid third parties daily rates). Nor would Defendants be prejudiced by the proposed amendments – no discovery in this case has yet taken place and Defendants seek to transfer this matter to the SDNY, which will effectively "restart" this litigation in a new forum.

Finally, Plaintiff's amendments are noy "futile." As discussed above, the factual allegations Plaintiff seeks to add will conclusively demonstrate that he is not a highly compensated exempt employee, even if the Court accepts Defendants' interpretation of the DOL regulations. *See supra* at III.B.9. Second, the New Jersey class allegations are based on: (1) the statements in the Mascari declaration that there are some 333 individuals who worked in New Jersey from 2018 to 2020 for whom Defendant SocGen paid third parties daily rates, *see* ECF No. 14-3, Ex. A (Mascari Decl.) ¶ 5; and (2) Defendant SocGen's representations that the individuals identified in the Mascari declaration are "putative collective action members," SocGen Mem. at 15, indicating that they are similarly situated to (and thus have claims in common with) Plaintiff.[5]

## IV.    CONCLUSION

For the reasons set forth above, the Court should: (1) grant Plaintiff's motion to amend; (2) deny Defendants' motions to dismiss; and (3) transfer this matter to the SDNY. In the alternative, the Court should: (1) grant Plaintiff's motion to amend; (2) grant Defendants' motion to transfer; and (3) decline to consider Defendants' motions to dismiss.

---

[5] Phyton argues that the Court should dismiss Plaintiff's individual claims of discrimination and retaliation against it. Phyton Mem. at 11-12. But Plaintiff's complaint clearly states those claims are alleged against only Defendant SocGen. *See* Compl. at pp. 9-10.

Dated:   New York, New York       Respectfully submitted,
           October 18, 2021

                                           /s/ *Lucas C. Buzzard*
                                           D. Maimon Kirschenbaum
                                         Lucas C. Buzzard
                                         JOSEPH & KIRSCHENBAUM LLP
                                         32 Broadway, Suite 601
                                         New York, NY 10004
                                         212-688-5640 (Tel.)
                                         212-981-9587 (Fax)

                                         *Attorneys for Plaintiff*